UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                            )
                                  )
    WALTER J. EIDSON, JR.         )    Case No. 08-13416-BFK
                                  )    Chapter 7
            Debtor                )

MEMORANDUM OPINION

This matter comes before the Court on the Chapter 7 Trustee's request for approval of his Final Report (Docket Nos. 139, 140) and the Debtor's Objection (Docket No. 143). The issue is whether the Trustee is entitled to a commission under Bankruptcy Code Section 326(a) on proceeds that were distributed to the Debtor's wife for her interest in property that the Trustee sold pursuant to Section 363(h) of the Bankruptcy Code. The Court concludes that a commission on a co-owner's interest in property is not contemplated by Section 326(a). The Court will disallow the Trustee's commission on Ms. Eidson's interest in the property.

**Findings of Fact**

Having heard the arguments of the parties, and having reviewed the parties' submissions, the Court makes the following findings of fact:

1.      This voluntary Chapter 13 case was filed on June 13, 2008. Docket No. 1.

2.      The case was converted to Chapter 7 on September 26, 2008 (Docket No. 33), and Mr. Gold was appointed as the Chapter 7 Trustee.

3.      The Trustee was permitted to employ his law firm, Wiley Rein LLP, as his counsel. Docket No. 53.

4. In addition, with Court approval, the Trustee employed Long & Foster Realtors and Ms. Sanchez as the Trustee's real estate broker and agent. Docket No. 78. The employment of the real estate agent was for the purpose of selling the Debtor's and his wife's property in Arlington, Virginia.

5. On February 3, 2009, the Trustee filed a Complaint in this Court against Ms. Eidson, seeking to sell the property. Adv. Pro. No. 09-01034-SSM.

6. On October 29, 2009, the Court approved a compromise, under which (among other terms): (a) Ms. Eidson would consent to a sale of the property, pursuant to 11 U.S.C. § 363(h); (b) Mr. Eidson would receive $5,000 of the sale proceeds as his exempt property; (c) Ms. Eidson would receive $50,000 out of the sale proceeds; (d) the parties agreed that the State Court in the Eidsons' divorce case would make the determination as to the distribution of the net proceeds of sale – unless the State Court failed to do so within 9 months, in which event, the Bankruptcy Court would make that determination; and (e) Ms. Eidson consented to the payment of non-joint claims from the proceeds of sale. *Order,* Docket No. 73.

7. On January 31, 2011, the Trustee moved to sell the real property. Docket No. 94. The Debtor objected to the sale. Docket No. 97. Ms. Eidson also filed a Response to the Motion to Sell. Docket No. 100. Notwithstanding these Objections, the sale was approved (Docket No. 104) and the sale closed on March 25, 2011 (Docket No. 111).

8. The property sold for a purchase price of $1,331,000. After payment of the real estate commissions, real estate taxes, and encumbrances against the property, the Trustee reported $441,736.61 in net proceeds from the sale. *Trustee's Report of Sale*, Docket No. 111. After some credits and adjustments, the Trustee deposited $429,589.63 into his trustee account. *Trustee's Final Report*, Docket No. 139, Ex. B.

9. Pursuant to the terms of the October 29, 2009, Order, the Trustee paid Ms. Eidson $50,000 out of the sale proceeds and paid Mr. Eidson $5,000 as his exempt property. *Id.*

10. On August 2, 2011, the Trustee filed a Motion for approval of a settlement with Ms. Eidson, with respect to her interest in the sale proceeds. Docket No. 132. Mr. Eidson objected to the proposed compromise. Docket No. 134.

11. On August 25, 2011, the Court approved the Trustee's compromise with Ms. Eidson, over Mr. Eidson's objections. Docket No. 136. The compromise required the Trustee to pay Ms. Eidson the sum of $229,066.82. *Id.*

12. After payment of the $229,066.82 to Ms. Eidson, the Trustee was left with $149,032.35 net proceeds in the estate.

13. On June 21, 2012, the Trustee filed his Final Report, as well as an Application to compensate his law firm pursuant to 11 U.S.C. § 330. Docket Nos. 139, 141.[1] The Trustee requested $72,309.94 in compensation for his law firm. At the hearing, the Trustee noted a voluntary reduction of $42,295 in his law firm's fees and then further reduced the firm's fees in the amount of $5,000. The voluntary reduction of $42,295, however, resulted in no funds being made available for payment to the unsecured, non-priority creditors, because the Trustee requested that the balance of the proceeds be used to pay the Trustee's commission under Section 326(a). The $5,000 reduction did result in an increase in the distribution to the priority creditors, from $11,660 to $16,660.

14. In addition to his firm's legal fees, the Trustee requested statutory commission in the amount of $63,395.47 and expenses of $427.20. *Trustee's Final Report*, Docket No. 139,

---

[1] It is not clear to the Court why there was a delay of ten months between the Court's approval of the compromise with Ms. Eidson, and the Trustee's request for approval of his Final Report.

Ex. D. The Trustee calculated his commission on all of the sale proceeds – including the amounts that were paid to Ms. Eidson as the co-owner of the Arlington property.[2]

15.     The Court ruled on August 14, 2012, that it would approve compensation to Wiley Rein for fees in the amount of $65,335.00, and expenses in the amount of $1,975.94. Docket No. 145. The Court took under advisement the Trustee's request for payment of his commission, in order to consider whether Section 326(a) of the Bankruptcy Code allows the trustee a commission on the amount paid to Ms. Eidson for her interest in the property.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the Order of Reference of the U.S. District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

Ordinarily, a Debtor does not have standing to challenge the award of professional fees and expenses, nor to object to claims, in an insolvent Chapter 7 estate. *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985); *In re Williams*, 2012 WL 115413 (Bankr. E.D. Va. 2012). However, Mr. Eidson argues in this case that, but for the payment of the Trustee's compensation and legal fees, the funds would be payable on non-dischargeable tax claims for which he continues to be responsible. The Court agrees that this continuing exposure to the tax obligations gives him standing to object to the Trustee's compensation. *McGuirl v. White*, 86 F.3d 1232, 1234 (D.C.

---

[2] Ms. Eidson filed a priority proof of claim for asserted domestic support obligations, in an undetermined amount. Proof of Claim No. 10-1. It is clear, however, that the above amounts of $50,000 and $229,066.82, were paid to her on account of her interest as a co-owner of the Arlington property, not on account of her status as an alleged priority creditor in the case.

4

Cir. 1996); *In re Moss,* 320 B.R. 143, 149-50 (Bankr. E.D. Mich. 2005); *In re Marshall*, 2010 WL 3959612, n.1 (Bankr. E.D. Va. 2010) (Debtor had standing in a surplus case).

The Court, having approved the Trustee's legal fees and expenses, has a single issue before it — the amount of the Trustee's commission. Specifically, the issue is whether or not the Trustee is entitled to a commission on property that he has distributed to Ms. Eidson as a tenant by the entirety of the Arlington property pursuant to 11 U.S.C. § 363(h). There is surprisingly little law on this subject of the Trustee's commission, and there is no guidance from any Circuit Court of Appeal.

1. *Sections 326(a), 330(a)(7) and 330(a)(3)*

Section 326 of the Bankruptcy Code defines limitations for the Trustee's compensation. Specifically, Section 326(a) of the Code provides:

> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a).

Section 330(a)(7) was added to the Code as part of the 2005 BAPCPA Amendments. It provides that compensation under Section 326 shall be treated as commission. § 330(a)(7). At the same time, Congress added the following italicized language to Section 330(a)(3) of the Bankruptcy Code:

> In determining the amount of reasonable compensation to be awarded *to an examiner, trustee under chapter 11, or professional person*, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – [the six factors generally known as the *Johnson* factors].

11 U.S.C. § 330(a)(3) (emphasis added).  Thus, the Court is not required to consider the *Johnson* factors in awarding a Chapter 7 Trustee his or her compensation under Sections 326(a) and 330.  A number of courts have held, however, that this amendment to Section 330(a)(3) does not preclude the Court from considering the *Johnson* factors.  *In re Ward,* 418 B.R. 667, 676 (W.D. Pa. 2009); *In re Coyote Ranch Contractors, LLC*, 400 B.R. 84, 95 (Bankr. N.D. Texas 2009).  Moreover, it has to be remembered that Sections 326(a) and Section 330(a)(7) both continue to use the term "reasonable compensation."

The Ninth Circuit Bankruptcy Appellate Panel recently considered the meaning of Section 330(a)(7).  After considerable statutory analysis, the Court concluded that Section 330(a)(7) was intended to make the Trustee's compensation under Section 326(a) commission-based, rather than being reflective of a lodestar, hours expended, analysis.  *In re Salgado-Nava,* 473 B.R. 911 (9th Cir. B.A.P. 2012).  With respect to the Trustee's compensation, the Court held:

> [A]bsent extraordinary circumstances, chapter 7, 12 and 13 trustee fees should be presumed reasonable if they are requested at the statutory rate.  Congress would not have set commission rates for bankruptcy trustees in §§ 326 and 330(a)(7), and taken them out of the considerations set forth in § 330(a)(3), unless it considered them reasonable in most instances.  Thus, absent extraordinary circumstances, bankruptcy courts should approve chapter 7, 12 and 13 trustee fees without any significant additional review.

*Id.* at 921.

This Court agrees.  The purpose of the amendment to Section 330(a)(3), and the addition of Section 330(a)(7) to the Code in 2005, was to clarify Congress's intent that the Trustee's compensation is, unlike professional fees, to be commission-based, absent extraordinary circumstances.  As noted above, there is still a reasonableness requirement under Sections 326(a) and 330(a)(7).  However, in light of the 2005 Amendments, and absent extraordinary

circumstances, this reasonableness requirement should be viewed primarily in terms of results achieved (i.e., a commission-based compensation), rather than the traditional *Johnson*-type, lodestar factors.

2. *Section 363(j)*

The Trustee, in arguing for a commission based on Ms. Eidson's portion of the sale proceeds, relies on the plain language of Section 326(a), which provides that the trustee's commission is payable "upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." § 326(a). The Trustee's position is supported by case law. *In re Robert Plan Corp.*, 2012 WL 3597564 (Bankr. E.D. N.Y. 2012); *In re Circle Investors, Inc.,* 2008 WL 910062 (Bankr. S.D. Tex. 2008); *In re Rybka*, 339 B.R. 464 (Bankr. N.D. Ill. 2006); *In re Guyana Dev. Corp.,* 201 B.R. 462 (Bankr. S.D. Tex. 1996).

However, another section of the Code is relevant here, that of Section 363(j). Section 363(j) delineates the Trustee's responsibility regarding the proceeds of a sale of property under Sections 363(g) or (h). Specifically, it provides:

> After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, *not including any compensation of the trustee,* of such sale, according to the interests of such spouse or co-owners, and of the estate.

11 U.S.C. § 363(j) (emphasis added).

Thus, it is clear that under Section 363(j), the co-owner's share of the proceeds of property are to be distributed to the non-debtor co-owner without a deduction for the trustee's commission allocable to the co-owner's interest in the property. *In re Flynn*, 418 F.3d 1005, 1007 (9th Cir. 2005) ("The plain meaning of § 363(j) is that only costs and expenses which do

not include compensation of the trustee may be deducted from the proceeds before they are divided."). There is no indication in Section 363(j), or elsewhere, that the Trustee is then entitled to charge the estate's portion of the proceeds with the Trustee's commission allocable to the co-owner's interest in the property under Section 326(a). Thus, we are faced with two competing "plain language" provisions of the Code. The two provisions, however, are not irreconcilable. Rather, they can be read together in one of two ways – either Section 326(a) controls, and the limiting language of Section 363(j) should be ignored in awarding the Trustee his compensation (which is to say, the co-owner doesn't pay the commission, but the creditors of the estate do), or Section 363(j)'s exclusion of the Trustee's commission from the co-owner's distribution of proceeds ends the matter there, and no reference to Section 326(a) is required at all. In this sense, the two Code provisions present an ambiguity, not an irreconcilable conflict.

The Trustee argues that, as a matter of statutory interpretation, the contention that his compensation under Section 326(a) is limited under these circumstances would render Section 363(j) superfluous. But, he is correct here only if Section 326(a) by itself answers the matter. In the Court's view, Section 363(j), being the more specific of the two sections with respect to co-owners' proceeds, controls the more general rule of compensation in Section 326(a). *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (noting the canon of statutory construction that the more specific controls the general). Section 363(j) says that the proceeds are to be distributed to the co-owner "not including any [deduction for] compensation of the trustee;" it certainly does not state "not including any [deduction for] compensation of the trustee, but see Section 326(a) for compensation of the trustee with respect to these same proceeds," or words to that effect.

8

Arguably, the *Citi-Toledo Partners* case relied upon by the Trustee (Trustee's Mem, p. 6, (citing *In re Citi-Toledo Partners II*, 254 B.R. 155 (Bankr. N.D. Ohio 2000))), supports this argument under Section 363(j), and cuts against the Trustee's argument in favor of his commission, when the following passage from *Citi-Toledo Partners* is considered:

> The second issue raised by the United States Trustee in this regards holds that as 11 U.S.C. § 363(j) specifically prohibits a trustee from receiving compensation for the disbursement of funds turned over to a non-debtor entity which had a co-ownership interest in an item of property, so too should compensation be denied to Ms. Vaughan given that this case is very analogous to such a situation. However, the Court must also reject this argument as the real estate sold in this case was composed of two separate parcels of property held by two separate bankruptcy estates, and § 363 specifically limits its coverage to the situation where one parcel of property is held by two or more co-owners.

254 B.R. at 162.  Had the situation in *Citi-Toledo Partners* been the same as it is here, with a single parcel of property owned by the Debtor and a non-debtor co-owner, the result may well have been different.

One reported decision from this district has held that the phrase "moneys disbursed or turned over in the case by the trustee to parties in interest" under Section 326(a) requires that the trustee meet the following four-part test:

1. The money must be disbursed.
2. The Trustee must disburse the money (though the Trustee may direct a third party, such as a settlement agent, to disburse funds on his or her behalf).
3. The money must be property of the estate.
4. The money must be distributed to a party in interest.[3]

*In re Market Resources Development Corp.*, 320 B.R. 841, 847 (Bankr. E.D. Va. 2004).

The Trustee attempts to distinguish the *Market Resources* case, by arguing that the property in that case indisputably was not property of the estate – it was owned by a third party, and the Debtor held a disputed second lien deed of trust.  *See* 320 B.R at 849 ("The trustee is no

---

[3]  There is no dispute that Ms. Eidson is a party in interest with respect to the disposition of the proceeds of the sale.

more entitled to include the funds as part of the base for purposes of calculation than if he had found the money on the street, picked it up and returned it to its owner."). But if this was true in *Market Resources*, it is also true here – the Trustee plainly did not have any ownership interest in Ms. Eidson's interest in the property.

Indeed the Trustee's argument on this point raises more questions than it answers. The Trustee argues that the property was held by the Debtor and Ms. Eidson as tenants by the entirety. A tenancy by the entirety is a form of ownership of property that comprises four unities: "unity of time, unity of title, unity of interest, and unity of possession." *In re Bradby*, 455 B.R. 476, 481 (Bankr. E.D. Va. 2011) (quoting *Pitts v. United States*, 242 Va. 254, 408 S.E.2d 901, 903 (1991)). Neither spouse can sever the tenancy by his or her sole act. *Id*. In effect, both the Debtor and Ms. Eidson owned an undivided (and indivisible) 100% interest in the property or in the common law, *per mi et per tout,* "by the half and by the whole." *Black's Law Dictionary* (9th ed. 2009). This construct begs the question as to why the trustee would be entitled to any commission at all, if the property is owned "by the whole" by Ms. Eidson. It can't be that the Trustee is deprived of any commission, owing to Ms. Eidson's co-ownership interest in the property as tenants by the entirety.

Putting it back into the bankruptcy context, suppose that Ms. Eidson were in bankruptcy as well, in a separate case. Her Chapter 7 Trustee and the Chapter 7 Trustee in the instant case would not each be entitled to a commission on 100% of the sale proceeds. Each of the two Trustees would be entitled to a commission on that portion of the sales proceeds allocable to his or her Debtor's interest in the property.[4]

---

[4] Section 326(c), which applies when there is more than one trustee in a single case, limits the compensation of multiple trustees to that of a single trustee. Section 326(c) does not apply in this case, because there is only one case, and only one Trustee.

10

Moreover, Section 326(a) plainly excludes a commission based on amounts payable to the Debtor, whether as exempt property or in a surplus case. 11 U.S.C. § 326(a) ("upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor"). It would be anomalous to suppose that Congress intended that the Trustee be paid a commission based on the non-debtor's interest in property, but that the Trustee is not entitled to a commission based on the Debtor's surplus interest in the same property – especially if the property is held as tenants by the entirety (where, as noted, the legal fiction is that both spouses own the entire property).

This gets us back to the premise that the Trustee's compensation is commission-based, i.e., based on the results achieved for his or her bankruptcy estate. If the Trustee's position is correct, then the Trustee could sell the property, realize substantial net proceeds, and not care about the result for his estate as against the co-owner. Under the Trustee's view of the statute, the Trustee has no incentive whatsoever to argue in favor of retaining the proceeds for the creditors of his bankruptcy estate. He could simply agree (subject to Court approval) that Ms. Eidson was entitled to the lion's share of the proceeds, leaving only enough in the bankruptcy estate to pay his commission based on 100% of the sale proceeds. The Trustee argues that his position makes "practical sense," in the following way:

> Complicated factual and legal disputes that would otherwise cost the estate significant resources to litigate are often settled in bankruptcy court. Included amongst the issues settled may be those issues concerning whether property is property of the estate meaning that issues otherwise settled may need to be re-litigated months or even years after the issue was initially brought before the court.

*Trustee's Mem.*, Docket No. 146, pp. 7-8. But – the Trustee's position stops short of what is ultimately required of him as a fiduciary. His job isn't just to litigate over the proceeds, nor just

to settle; his job is to retain as much for the creditors as is reasonably possible under the circumstances.

The Court's conclusion is entirely consistent with the idea of a commission-based compensation to the Trustee, as now embodied in Sections 326(a), 330(a)(3) and 330(a)(7).  A commission-based compensation system should have the corresponding incentive to earn the commission, and further, should be consistent with the Trustee's fiduciary duties not just to liquidate property but to return as much money to the creditors of his bankruptcy estate as possible.  Any other result would be inconsistent with the Trustee's fiduciary duties to the creditors.

For these reasons, the Court concludes that Section 363(j) precludes the payment of a commission to the Trustee based on the co-owner's interest in property sold pursuant to Section 363(h).

## Conclusion

For the foregoing reasons, the Trustee will not be allowed a commission based on the funds disbursed to Ms. Eidson for her interest in the property.  The Trustee will be directed to re-notice his Final Report for a hearing, with the commission adjusted accordingly.  A separate Order will issue.

Date:  
Alexandria, Virginia

_____  
Brian F. Kenney  
United States Bankruptcy Judge

Copies to:

Walter J. Eidson, Jr.
PO Box 8413
Reston, VA 20195
Debtor, *pro se*

H. Jason Gold, Esquire
Wiley Rein LLP
7925 Jones Branch Drive, Suite 6200
McLean, VA 22102
Trustee

Alexander McDonald Laughlin, Esquire
Wiley Rein LLP
7925 Jones Branch Drive
Suite 6200
McLean, VA 22102
Counsel to Trustee

Jack Frankel, Esquire
Office of the U.S. Trustee
115 South Union Street, Ste. 210
Alexandria, VA 22314